Good morning, Your Honors. May it please the Court, Greg Wedner, on behalf of Appellant City of Los Angeles. And based on the depth of the briefing, I would like to reserve three minutes for rebuttal, if the Court will agree. Sure. Thank you. I would like to focus today on what I would call the two critical issues that bring us to the rule of white decided by this Court in terms of issue preclusion based on the unreviewed Board of Rights determination. And second of all, the instructional error that we believe was committed with respect to the trial court not responding once or twice to the jury's clear confusion about the difference between whether discipline can be imposed based upon comments made in the course of a protected proceeding versus imposed because of the admissions made there. Let's, let me concentrate on the second one for a second. Your position, as I understand it, is that you can't fire somebody for the physical act of taking the stand, but you can fire him for what he says once he's on the stand. That is our position. Okay. If that position is wrong, then the district judge made no error in not responding to the jury's questions, correct? Well, yes and no. Yes, if the jury was properly instructed in the first place with respect to the elements of the offense or strike that, the elements of the claim. And we believe under the Joaquin decision, which has been cited in our brief and is pretty close on point, the judge did not properly instruct with respect to how the jury was to parse through the process that is the act of testifying. Right. But, but your, as I understand it in this case, and I think your, the, the record is quite clear, your client makes no pretense that, that the thing that led them to investigate Mr. Avila and eventually discipline him was the fact, was what he said on the stand. Absolutely correct. You don't contend that you learned it from some independent source and this is just a, a coincidence. That, that's correct. So if we're applying, to, to take a rough analogy, a transactional immunity statute, and I'm not sure that's a good analogy, but if we were applying that, we, you wouldn't be claiming you had an independent source or reason for, for disciplining him other than his testimony on the stand. Well, yes, but let me, let me respectfully point out that in the record in this case, the testimony led to the internal affairs investigation based on the transcript, but then there were the efforts made by the investigator of IA to confirm whether those statements were or were not correct, and if Ms., Officer Avila wanted to add or change anything, and the record is clear that Officer Avila, either directly or through his representative, said, nope, that's right. Fair, fair enough, but let me ask the question, let me ask the question somewhat differently. Could you have fired Mr. Marciel? For bringing a... Bringing the action and then taking the stand in the, in the action and saying this is what happened. What did he say? What's assumed that he said in, in the, in the FILSA action. Here's, here's why I'm claiming overtime. I work through lunch all the time. I know I'm, I'm, I know I'm supposed to put in for that, but there's an, an official department policy that I don't. That's his, I understand that's the gist of his FILSA case because that's what Mr. Avila is subpoenaed to testify about. Could you have fired Mr. Marciel? That would have been a closer case because we would have to determine whether he acknowledged receipt of the judge's, the chief's order to do... No, no, put it aside, just for the conduct. For the conduct, in other words, he's admitting conduct which you think is disciplinable. I... He files a lawsuit that says I engaged in this conduct and this conduct entitles me to overtime. Could you have fired him for that? I believe the answer is yes. So what good is the, is the anti-retaliation provision in the statute then? Because he was not required by anything that the city or anyone else did to make that admission. Suppose you only discipline the people who testify, but you have people doing the very same thing who don't testify. Wouldn't he have a retaliation claim then? He might have a retaliation claim if he can overcome his own admission of misconduct. That, that... And I guess I'm not asking the question right. If you have five people who don't put in for overtime when they go to lunch and the only one you fire is the guy who testifies about it, doesn't he have a retaliation claim then? He may argue that retaliation claim and that's exactly what happened here. Exactly. Your Honor. But the problem is, and I don't want to move away from Judge Hurwitz's focus on the instructional error, he had that opportunity and in fact argued retaliation, he through his counsel, Mr. Kwan at the Board of Rights. They raised the retaliation issue and the Board of Rights found based upon simply the admissions made in the Mossiel litigation as well as... We understand all that, but the problem, Judge Otero says, is even if he was insubordinate, you don't fire anybody else. You only fire him and that's why this verdict can stand. Again, I don't mean to dodge Your Honor's questions. Had there not been a Board of Rights proceeding where he could have and did argue that, I would agree. I would agree. Show me where in the Board of Rights proceeding the Board determined that he was fired, not in retaliation for his testimony. Your Honor, the excerpts of record indicate that Mr. Kwan at the commencement of the proceeding after Officer Avila had been sworn and pled not guilty... I understand what counsel said. Counsel said, this is a sham, you're firing him for testifying. And they then find him insubordinate for not following the regulations. Tell me where there's a finding in that or what... that it seems... My difficulty is the position you're taking is it's perfectly okay to fire him for testifying. And that's been your position throughout. And so I don't... I have a hard time reading the Board of Rights proceeding as saying, oh no, we reject the city's position. We think that it wasn't okay to fire him for testifying, but we're finding something different. I mean, I can't find that anywhere in the Board of Rights proceeding. And I would agree, Your Honor, there is no express finding that I can point to. Is there an implied finding? It has been the city's position throughout, it's perfectly okay to do this. I am. I am. Necessarily, they had to disregard the defense in order to reach the conclusion. Absolutely. And that's where I think White is controlling. White... I'm sorry. I accept Judge Vinson's revision of my question. But my question is, your argument throughout has been, this is not a defense. Your argument has been throughout, we're not arguing a factual matter. We're saying we're entitled to fire him for what he said on the stand. So I don't understand why the Board necessarily dealt with this one way or another. Because the Board, based upon... So this is irrelevant. They're full-blown smokescreens. So pay no attention to the man behind him. I have an instruction question for you. Certainly, Your Honor. It seems to me that the entire instructions given by the judge all the way through are now erroneous of the University of Texas Southwestern Medical Center decision of last June. And this would mean that for Title VII purposes and for SLA purposes, you've got a but-for standard. When you have a but-for standard, then you don't have the same decision instruction. You have an instruction that has to be another separate decision. But none of that was presented to the jury. None of that was apparently considered by the jury. The law has now changed, including the law of the Ninth Circuit. So what do we do with that? Your Honor, I have read, but I'm not familiar with the case you cited. I know it does change or at least clarifies the law for purposes of Title VII to make it a clear but-for. Instruction purposes, it makes all the difference in the world. It may very well, if- Can't use a motivating factor anymore. That's not the standard. And I would suggest if this honorable panel determined that based on that- But you didn't argue that in your brief at all. You didn't touch on it. We did not because we believe that the need for clarification, as we indicated, was the appropriate way to go with respect to instruction clarity. But didn't you admit below the but-for standard, didn't you get more favorable instructions than you were entitled to? I mean, as I read the declarations, it says, this is why we fired him because we learned during his testimony that he'd done this. So surely, if you're wrong about whether or not the retaliation thing covers more than simply the taking of the stand, you got a more favorable instruction than you were entitled to. I'm not sure I agree with your honor because there was still the clear confusion on behalf of the jury in trying to distinguish between the act of testifying and the contents of that testimony. But I guess my point is that if the jury, if it covers the contents of the testimony, if the anti-retaliation statute covers the contents of the testimony, we don't have any dispute in this case that you fired one of the – that you fired him because of the contents of his testimony, do we? No. I get it. So that whether the jury was confused or not would have made no difference in terms of the ultimate verdict. Well, I – They may have thought less was required, but it doesn't make any difference, does it? Well, but I believe it would make a difference, and the court, Judge Otero, actually acknowledged the difference. If you refer to pages 12 and 13 of the reply brief, Judge Otero, in response to the second question, said, quote, my sense is that the jury is caught in a circular reasoning process. It would appear that the jury should be told that a person can testify in an FLSA proceeding, that the testimony is protected, and that in this case, the LAPD could not terminate plaintiff for testimony, the fact that he testified in an FLSA proceeding. The follow-up is that they could terminate him if the department concluded that he made an admission in that testimony that provided separate but good cause to terminate him. So they can't terminate him for testifying, but they can terminate him if he made an admission that provided separate grounds for termination that arose to good cause. The judge acknowledged it and, at that point, should have, in our belief, addressed the jury's confusion. Is this plain error? Was it – what kind of objection was made to the instruction that was given, which is quite totally different? In fact, it says, played no role, which is not even close to being the same decision instruction. Well, what – what objection did you make to that? We objected – I think the record, and I apologize, I don't remember exactly. We – we objected to the court's re-giving the prior instructions, and these were the two instructions that we proposed from the Joaquin case were the ones that the – that the court overruled and refused to give. Well, the instruction that was given was not the one you requested. Correct. The one that was given said the plaintiff's participation in a protected activity played no role. It doesn't say anything about the same decision or anything close to that. What objection did you make to that at the time that it was? I believe we filed objections, but I don't want to make that representation for the record. I simply don't want to file it. So we're saying it's plain error, then? I am saying for purposes of the jury instructional error, it would be plain error. I see you're down to less than two minutes. Thank you very much. Thank you. Good morning, Your Honor. Stewart Estner, along with Douglas Winter for plaintiff and appellee. Maybe I should begin with the issue that you're raising. Well, let me ask you right off the bat. Your client resigned and his resignation was accepted. And what are you challenging as the conduct here that's either in violation of the protected activity or whatever it may be? Well, the issue is that my client resigned after charges were brought based upon disparate treatment. I don't see anybody – I don't see the word constructive discharge anywhere in here. Well, it's an FLSA violation. In fact, he was retaliated against because the charges were brought against him in the first instance based upon the fact that he testified adverse to the LAPD's interest in the Massiel trial. So it's not a constructive discharge case. It's a retaliation in violation of the FLSA case. Investigation, then, is the retaliation? Investigates bringing the charges against him and then ultimately having the charges confirmed by the chief of police to terminate the charge. So the charge was not a constructive discharge, it was an actual discharge. He resigned. He resigned. The Board of Rights nevertheless continued and discharged him, but recommended discharge more accurately because it's the chief of police who has the ultimate authority. Does that recommendation of discharge have any consequence? In other words, if I – since he quit before it occurred, does it have any consequence? Under the LAPD – yes. In the LAPD rules, it has consequence in the sense he's now a terminated LAPD officer. It may have consequences for purposes of his future career choices. Ultimately, however, the issue is he didn't quit on his own. He quit because the writing was already on the wall. He quit based upon the fact that – the mere fact that he testified in the Massiel trial that, in fact – and this was acknowledged – that what he – what he did was in violation of the written department – Well, let's cut to the chase here, as Judge Silverman likes to say. The difference between you and your opponent in this case is that you view the anti-retaliation provision as covering not simply that he testified. He wasn't fired because he testified in this case. He was fired because of what he said. And you view the anti-retaliation provision as covering not only the fact that he testified, but as including – as including prohibiting retaliation because of what he said on the stand. Of course, because if he had testified against – if he had testified in Massiel that the LAPD has no policy to have you work through lunch and not put in for overtime, I suspect – and I strongly suspect – the LAPD would not have done what it did to him. What if the LAPD were disciplining Massiel – I don't want to make – use him – interviewing – they were disciplining Joe Smith for beating up civilians, and Mr. Avila took the stand in his defense at the disciplinary proceeding and said, you shouldn't be picking on him, we all beat up civilians all the time for no reason. Could they discipline Mr. Avila under those circumstances? They could discipline him as long as what they are able to establish is that the discipline was based upon the mere fact that he – that they came upon information, regardless of what – Now, let's assume the only way they could have discovered this information was through Mr. Avila's testimony, that the LAPD had a – has a code of silence and nobody would ever talk about it, and you couldn't possibly discover this information otherwise. He took the stand and admitted committing a felony. Are they prohibited under those circumstances from firing him? No. Why not? Because they could fire him as long as what they're firing him for is the fact that they learned of his violation of department policy. The fact that they learned about it through testimony in a prior proceeding isn't – doesn't preclude them from firing him. Okay. So in this case, they learned – I'm not sure I understand your position at all. In this case, they learned about the violation of departmental policy through Mr. Avila's testimony at the hearing. Correct. They didn't know that Mr. Avila had violated policy, but he took the stand and said, yes, I violated policy too. Correct. So why is that different than my – than Mr. Avila admitting on the stand that he violated policy in another way by beating up civilians? Because the point – the siente or the mens rea, the state of mind of the department has to be that we're firing him or we're taking retaliatory – we're taking action against him, not because simply of the fact that we learned that, my God, there's gambling going on here. Mr. Avila is actually not putting in for lunch when he – for overtime, for not working through lunch. The fact is we're doing this because he had the audacity to testify against the LAPD in an FLSA proceeding. And – Excuse me, I wanted to – I wanted to ask you if the Board of Rights explicitly or implicitly found that he was not retaliated against. They did not and could not under the LAPD policy. The sole – the sole charge against Mr. Avila in the – before the Board of Rights was that – was count one, that Mr. Avila was on duties insubordinate to the LAPD when he failed to submit requests for compensation for overtime that he worked as directed through LAPD publications. Judge Otero specifically relied upon that fact in concluding that there could be no judicial estoppel here because the issue of retaliation simply was not before the Board. But there was a defense of retaliation argued and presented to the Board. There was a passing statement by – by Mr. Avila's counsel at the beginning of the Board of Rights. Discrimination and retaliation. That this was all trumped up because – but the reality was that wasn't an issue that was actually before the Board. The Board had before it a very discreet issue. Judge Otero – Could it have been litigated before the Board? Could that have been raised as a defense? Not under the Board. Not under the LAPD manual. It's not a – the defense – the defense is I did or did not violate department policy. And by the way, Judge Otero specifically also found that one of the acts of retaliation was not simply what happened at the Board, but what happened before the Board, leading up to the Board, and what happened after the Board when the chief accepted the recommendation. I want to jump over to the instructions for a minute. I asked Mr. Wedner about it. The law has obviously changed. All of these instructions that were given in the trial are erroneous now. What do we do with that? Well, it's disregarding the same decision instruction, which pretty clearly was not a same decision instruction. I don't think you need to do anything with that, Your Honor. First of all, because that instruction, my understanding – my recollection of the record was that no instruction was proposed by defendant consistent with what Your Honor is stating is present law. Moreover, the issue – the language that you referenced earlier, I believe, was actually proposed and given by defendants over plaintiffs' objection. Well, the proposal was slightly different. In fact, the impact would be quite different. The requested instruction was different. I can't recall exactly, but it's different from the as-given. The as-given instruction said it played no role. The requested instruction said they would have made the same decision, or words to that effect. Quite different. Well, I'm not sure, as I'm standing here, that there's a significant difference between making the same decision and playing no role. But in any event, the fact remains that this – and there was no objection specifically to the proposed – I've got a question for you. Do you view the southwestern decision as changing the standards in FILSA cases? I don't. I don't – I'm not prepared to really address that issue, as I'm standing here. In other words, this is a Title VII case. Correct. But this is a FILSA retaliation case. Correct. And I just am not prepared. That has not been raised by the defendants. It has not been briefed in this case. In a FILSA – so let's get back to – because I'd understood, and frankly, I thought that if you could only be making this argument, that your argument was that one cannot use the testimony of somebody in a FILSA case as a basis for firing him. But you seem to be saying this morning that – that you can. Am I misunderstanding your argument? I'm sorry I'm confusing the issue, Your Honor. This is a disparate treatment case. This is a case that's premised upon the fact that the LAPD decided to – Fire this guy and not other people. Mr. Alvada, Mr. Rodney, and Ms. Anderson, all of whom shared one thing in common. They happened to testify in Massachusetts. Now, I understand that. I understand the FILSA retaliation – I understand the gist of your claim. My question's a different one, which is that do you think that the FILSA retaliation – the use of testimony in a subsequent disciplinary proceeding that was given first at a FILSA hearing? Yes or no? It does not prohibit – there's not an absolute bar to use of testimony in a FILSA – in an earlier FILSA – So that – so that in your – in this case, your – your problem is not what Mr. Avila said at Mr. Marcial's FILSA hearing, but rather that you think they disciplined him because he testified without regard to what he said. No. And he – it's because he – of what he said because of – because he testified against the LAPD's interest. And that can't be divorced from what he said. So it wasn't the fact that he simply appeared at a trial and testified. If he had testified favorable to the LAPD's interest, then there would have been no retaliation against him. Okay, because I'd understood your briefs to be making an argument for some sort of transactional immunity, if you will, for testifying at a – at a FILSA hearing, which is to say that nobody can thereafter take disciplinary measures based on what you said. That's not your argument. That's not my argument. And the issue here is, as it was litigated in this case, as it was – as this case was tried, was premised upon the assumption that Mr. Avila actually acknowledged violating LAPD policy at the earlier Marcial trial. The Plaintiffs' Counsel in rebuttal specifically acknowledged the fact. The jury was – this whole case was litigated on the premise of, did the LAPD terminate Mr. Avila because he testified adverse to the LAPD's interest? The cost is but-for, though. That's a but-for standard. That's what we're agreeing on and not just – And that's essentially how this case was litigated. It was a black-and-white case. Was this – did the LAPD decide to retaliate, to terminate Mr. Avila because he testified adverse to the interest, the fact of testimony, and that his testimony, the content of his testimony was adverse to the LAPD's interest, or was it based upon the fact that they learned that Mr. Avila actually violated an LAPD policy? The jury was told it was protected activity. They were never told in any way that it was privileged, and it's not privileged. It's protected, but not privileged. So the jury was confusing privileged and protected, it seems, in the nature of their questions, were they not? It's unclear exactly what they were confused by in those questions. And by the way, getting to those questions, appellants continually overlooked the fact that there were two questions that they're talking about. The first question, there was a specific acknowledgment by appellant's counsel that the court's instruction to the jury was the correct way to go. So that should not be even an issue on the table at this point. Besides the questions, I want to go back to what the judge instructed the jury as to the elements of the action. Were the judge's instructions to the jury about what had to be proved by you accurate or inaccurate? Accurate. Why weren't they inaccurate in light of Judge Vinson's question? In other words, the jury was told that this had to be what? Well, played no role. Played no role. And and instead, let's assume for a moment that the real that the real standard is that it was a but for cause. Why wasn't that instruction inaccurate? Well, it was much smaller than but for cause. I think we'd agree. Yes, I would. OK, so. So if but for cause is really the standard, why wasn't the instruction inaccurate? Well, aside whether it was preserved. That's a separate issue. Outside of whether it was preserved. And if in fact, but for causation is the standard. And by the way, the jury was also instructed that it has to be a motivating factor. And assuming that's the case, that's the problem. The motivating factor has to go with the same decision. If it's but for, then you don't have to necessarily say same decision. But well, motivating and I may be answering this question by by by by engaging in a prejudice analysis, but it would have made no difference whatsoever in this case because either the jury believed that Mr. Avila was terminated because the department learned that he violated a policy or the jury believed that Mr. Avila was terminated because he testified adverse to the LAPD's interest in this case. It really was no in between. It was a you're making you're saying it wasn't plain error. It would have made no difference whatsoever in the outcome of this case. The jury simply believed the reality of what the weight of the evidence was that Mr. Avila was tested, was terminated. These actions were taken against him simply because he had the audacity to terminate. Was there evidence presented at trial that that other officers engaged in this practice but were not disciplined? Yes. I don't recall that other evidence. In fact, through Mr. Avila and Mr. Romney's testimony in the Massiel case was implicating supervisors who were specifically instructing them to do what they ultimately got terminated for, which is, you know, the absurdity of all of this is that they weren't doing this on their own. They weren't working through lunch and saying, I don't want to get paid for it because they decided it was a great idea to do that. They were specifically told this is how you have to do it by their supervisors. So the LAPD simply went ahead and terminated the individuals who were ordered to act in this particular way without ever investigating or taking any action against the supervisors who actually ordered these individual officers to act in this particular way. Thank you, Mr. Ressner. Thank you very much. Mr. Wedner, you've had a little time now. Thank you very much. Let me ask you a question raised by Mr. Ressner. He says basically that retaliation isn't even a cognizable defense before the board. That's not borne out by the record. First of all, there were two officers that were going to the same Board of Rights, Officer Avila and Officer Romney. Officer Romney was also represented by Mr. Kwan, and the same discrimination and retaliation defense was raised and argued by Mr. Kwan throughout the two plus days of the Romney hearing that went forward after Officer Avila resigned. And again, I cannot point to- That doesn't really answer his point. His point is it doesn't matter what you raise and what you argue. The board is not empowered to find that to be a valid defense. They just find did you do it or didn't you do it? And I disagree with that limitation. And what's your basis for disagreeing with it? The Judge Otero's determination on the legal preclusion that the Board of Rights process did rise to the level of a quasi-judicial proceeding in which defense- That's a different answer. That's a different answer to the question I'm asking. He says you can't, the board doesn't have the power basically to say we're going to give you a pass because you were retaliated against. The only thing we decide is did you commit the violation or didn't you? It's not for us to say whether there was retaliation. It's not a cognizable defense. What's your answer to that? My answer is I don't believe the board manual is that limited. And I can't cite- Okay. But I mean, your belief is nice. But I mean, that's not, you know, that doesn't help us. I would refer the Court to the board manual and Judge Otero's decision. But Judge Otero's decision cuts the other way. Judge Otero said this wasn't something he could have litigated in front of the board. I read the board manual, and I don't think they could. So tell me why she was wrong. He. He. All right. I'll judge Fisher in the other case. Because he, and if the Court is referring specifically to the summary judgment denial- Right. He indicated that there was an opening. He said, yes, they found legitimate, a legitimate basis for the discipline, i.e., the admission. All right. So I'm not going to let you argue now that you didn't do this. Right. But- You did it. They found it. You're stuck with it. But I don't think the board could have litigated your retaliation claim, Judge Otero says. And therefore, that's not precluded. And tell me why Judge Otero was wrong. Because there is no preclusion under the LAPD board manual for raising that issue, number one. Number two, let's return to this case. Had there been a retaliation defense that was raised and rejected or not acted upon by the Board of Rights, Officer Avila, just like Officer Romney had the availability of 1094.5 under the civil code, CCP, to challenge that and say, there was retaliation. You didn't rule on it, as he acknowledged in his pre-Board of Rights filings and admissions that the determinations made there would be binding in those pre-Board of Rights filings. He acknowledged- What if Mr. Avila had appealed the BOR decision as he had the right to do? Could he have raised the lack of acceptance of his retaliation claim on that appeal? Absolutely. The 1094.5 under the California Code of Civil Procedure is not limited. It allows you to challenge the propriety of an administrative proceeding. Okay. Thank you, gentlemen. Thank you very much. He's disbarred. You've been submitted. We'll stand at recess for the morning.
judges: Vinson, Silverman, Hurwitz